FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 13, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GUADALUPE MENDEZ,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ANTONY J. BLINKEN, in his official capacity as Secretary of State,<br><br>　　　　　　Defendant. | No.　2:20-cv-00272-SMJ<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

　　　The Court held a bench trial in the above-captioned matter on September 22, 2021, to determine whether Plaintiff is entitled to a declaration that she is a United States citizen. Clayton Cook-Mowery and Hector Quiroga appeared on behalf of Plaintiff Guadalupe Mendez. Assistant United States Attorney Joseph Derrig appeared on behalf of Defendant Anthony J. Blinkin. After considering the evidence presented at the bench trial and reviewing the portions of the record designated by the parties, the Court orally ruled in favor of Plaintiff and declared her a United States citizen. The following findings of fact and conclusions of law confirm and supplement the Court's oral findings and conclusions.

//

//

FINDINGS OF FACT AND CONCLUSIONS
OF LAW – 1

# FINDINGS OF FACT

The Court makes the following findings of fact from the evidence and testimony presented at the bench trial:

*Plaintiff's Parents*

1. Plaintiff was born to Micaela Nieto (maiden name Martinez) and Juan Nieto (Tovias or Tobias).

A. *Plaintiff's Mother – Micaela Nieto*

2. Plaintiff's mother, Micaela Nieto, was born in 1927 in Cerrito, San Luis Potosi, Mexico to Leocadio Martinez and Victoriana Martinez.

3. In October 1946, Micaela Nieto was issued an immigration visa under Section (4)(c) of the Immigration Act of 1924 and traveled to Edinburg, Texas with her father and sisters.

4. The Form I-448, Manifest or Report for Inspection for Micaela Martinez, dated October 7, 1946, states that she intended to reside permanently in the United States.

5. Micaela Nieto became a naturalized United States citizen in 1979 and died in 2009.

//

//

//

B. *Plaintiff's Father – Juan Nieto*[1]

6. Juan Nieto was born on March 30, 1923, in Liberty Hill, Texas.

7. Despite being born in the United States, Juan Nieto was issued a passport by the Mexican Immigration Service on June 12, 1947, and United States authorities issued him a border crossing card on June 19, 1947.

*Plaintiff's Parents' Marriage*

8. The State of Tamaulipas, Mexico, issued a civil marriage certificate for Juan Nieto and Micaela Martinez on January 6, 1946.

9. On February 1, 1948, the Sacred Heart Church in Edinburg, Texas, issued a document confirming the marriage of Juan Nieto and Micaela Martinez took place on that date in Texas.

*Plaintiff's Siblings*

10. Juan Nieto and Micaela Nieto had eight children:

    a. Anastacio Nieto (born in October 1948);

    b. Guadalupe Nieto (Plaintiff) (born in January 1950);

    c. Angela Nieto (born in November 1952);

    d. Sofia Nieto (born in September 1955);

---

[1] The parties briefed and argued whether Juan Nieto was born in the United States and lived in the United States for the requisite time period as an alternative way to prove Plaintiff's citizenship. Because the Court finds that Plaintiff was born in the United States, it need not decide this issue.

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 3

e. Isabel Nieto (born in November 1956);

f. Maria Nieto (born in December 1957);

g. Juan Nieto, Jr. (born in October 1960); and

h. Alfredo Nieto (born in February 1963).

11. Plaintiff's older brother, Anastacio Nieto, was born at home in October 1948, less than two years before Plaintiff's birth. At birth, Anastacio was "blue," meaning he was suffering from severe oxygen deficiency. As a result, he sustained lasting brain damage.

12. On March 11, 1954, Anastacio Nieto was issued an affidavit United States birth certificate designating his place of birth as Santa Cruz, Texas.

13. On February 24, 1954, approximately three years after Plaintiff's birth and two years after her own birth, Angela Nieto, was issued an affidavit United States birth certificate designating her place of birth as Santa Cruz, Texas.

*Plaintiff's Birth and History*

14. Plaintiff was born on January 3, 1950.

15. In 1950, births at home by attending midwife were common.

16. After Micaela Nieto's 1946 entry into the United States, there is no evidence that she ever left the United States and traveled to Mexico prior to Plaintiff's birth.

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 4

17. On January 20, 1950, the State of Tamaulipas, Mexico issued a birth certificate for Plaintiff, stating Plaintiff was born on January 3, 1950 in Matamoros, Tamaulipas, Mexico. The birth certificate states that her father presented her to Mexican authorities seventeen days after her birth.

18. Plaintiff's Mexican birth certificate lists Micaela Nieto's father—Plaintiff's maternal grandfather—as residing in Edinburg, Texas.

19. Plaintiff's maternal aunt, Ms. Tomasa, testified via deposition that her sister, Plaintiff's mother, told her about Plaintiff's birth in Santa Cruz, Texas.

20. On March 11, 1954, Plaintiff obtained an affidavit birth certificate stating she was born in Santa Cruz, Texas on January 3, 1950.

21. In approximately 1955, Guadalupe Mendez and her family moved to San Antonio, Texas.

22. Certified records from the San Antonio Independent School District show that Plaintiff attended school in the district between 1959 and 1966, with Plaintiff starting in the third grade and finishing in the ninth grade. Plaintiff's San Antonio school records state that she previously attended Sacred Heart Catholic School in San Antonio and that she was born in San Antonio, Texas.

23. From 1977 to 1980, Plaintiff lived in England with her husband, Lawrence Mendez, while he was stationed there pursuant to his service in the United

FINDINGS OF FACT AND CONCLUSIONS
OF LAW – 5

States Air Force. In 1977, Plaintiff applied for and obtained a United States passport, which she was required to turn in upon her return to the United States.

24. Plaintiff was employed in the United States federal service at the Childcare Center on the Fairchild Air Force Base from 1992 until 2017. This position required proof of citizenship, and Plaintiff's citizenship was never called into question during her service.

25. Plaintiff served on a jury in Spokane, Washington in February of 2019.

26. Plaintiff has no memories of her childhood prior to moving to San Antonio and attending the first grade; however, her parents always told her she was born in Santa Cruz, Texas.

27. Nobody has ever told Plaintiff that she was born in Mexico.

28. Prior to applying for a United States passport, Plaintiff had no knowledge there was a Mexican birth certificate issued in her name.

29. Plaintiff experienced shock and confusion when she learned there was a Mexican birth certificate issued in her name.

*Plaintiff's Passport Application*

30. On October 31, 2018, Plaintiff went to the United States Post Office in Cheney, Washington and executed a form DS-11 Application for a United States passport. In support of her application, she attached her affidavit United States birth certificate.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW – 6

31.     While adjudicating Plaintiff's passport application, the Department of State ("the Department") uncovered Plaintiff's Mexican birth certificate.

32.     From November 29, 2018 to February 22, 2019, the Department sent Plaintiff several information request letters ("IRLs") requesting more information to substantiate her claim that she was born in the United States. Mendez responded to the IRLs with supplemental school and biographical records.

33.     On June 28, 2019, the Department denied Plaintiff's application for a United States passport, finding that the evidence Plaintiff submitted was insufficient to establish her birth in the United States.

34.     On September 23, 2019, Plaintiff, through her newly retained attorney, sent the Department a letter requesting the issuance of a passport. With the letter, Plaintiff provided photocopies of the previously submitted school and biographical evidence, affidavits from Plaintiff's younger siblings and her maternal aunt, news articles about midwifery, and a copy of her father's Texas birth certificate.

35.     On October 2, 2019, the Department sent Plaintiff a letter explaining that Plaintiff could apply for a new passport and provided her a blank DS-11 Application.

36.     On October 31, 2019, Plaintiff executed a second DS-11 Application at a United States Post Office in Airway Heights, Washington.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW – 7

37. On November 20, 2019, the Department requested additional information from Plaintiff to substantiate her birth in the United States.

38. On March 5, 2020, the Department sent Plaintiff a letter noting its receipt of the additional documents and explaining that after reviewing the supplemental information, the Department's February 19, 2020 decision to deny Plaintiff's passport application remained in place and would not be reopened.

39. On August 6, 2020, Plaintiff filed suit in this Court. ECF No. 1. Plaintiff eventually filed her First Amended Complaint, the live pleading in this matter, ECF No. 7, which brings a single claim for relief under 8 U.S.C. § 1503(a). Although not formally asserted as a ground for relief, Plaintiff also requests mandamus relief compelling Defendant to process and approve her application for a United States passport. ECF No. 7 at 2–3.

40. Plaintiff, at all relevant times, resided in Medical Lake, Washington—which is within the Eastern District of Washington.

## CONCLUSIONS OF LAW

*Jurisdiction and Venue*

1. The Court has jurisdiction over Plaintiff's claim pursuant to 8 U.S.C. § 1503(a) and 28 U.S.C. § 1331.

2. An action under § 1503(a) must be brought in the United States District Court for the district in which Plaintiff resides. Plaintiff resides in Medical

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 8

Lake, Washington, within the jurisdiction of the Eastern District of Washington. As such, venue is proper in this district and the Court has subject matter jurisdiction over Plaintiff's § 1503(a) claim.

*Declaratory Relief under 8 U.S.C. § 1503(a)*

3. Title 8 U.S.C. § 1503(a) allows any person who has been denied a right or privilege on the basis of non-nationality to file a declaratory judgment action for a *de novo* determination of his or her citizenship. *See Vance v. Terrazas,* 444 U.S. 252, 256 (1980); *Richards v. Secretary of State, Dept. of State,* 752 F.2d 1413, 1417 (9th Cir. 1985). It is undisputed that Plaintiff applied for and was denied a United States passport due to the existence of Plaintiff's Mexican birth certificate. Accordingly, Plaintiff is entitled to a *de novo* determination of her citizenship.

4. An applicant for a passport has the burden to establish entitlement to a passport by showing citizenship by a preponderance of the evidence. *Mah Toi v. Brownwell*, 219 F.2d 642, 643 (9th Cir. 1955). Proving a fact by a preponderance of the evidence means showing that the existence of said fact is more likely than not. *See, e.g.*, *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

5. Evidence of foreign birth gives rise to a presumption that the person so born is an alien. The presumption continues until the person proves otherwise.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW – 9

*Corona-Palomera v. Immigr. & Naturalization Serv.*, 661 F.2d 814, 818 (9th Cir. 1981).

6. Plaintiff may prove she is a United States citizen by submitting secondary evidence of birth in the United States. "Secondary evidence includes but is not limited to hospital birth certificates, baptismal certificates, medical and school records, certificates of circumcision, other documentary evidence created shortly after birth but generally not more than 5 years after birth, and/or affidavits of persons having personal knowledge of the facts of the birth." 22 C.F.R. § 51.42(b).

7. Despite the existence of a Mexican Birth certificate issued in Plaintiff's name, the Court finds that Plaintiff has overcome the presumption against her and proved that it is more likely than not that she was born in the United States. Most importantly, Plaintiff was issued an affidavit United States birth certificate in 1954. While the Government stressed that several years passed from Plaintiff's birth before she obtained her United States birth certificate, the Court credits testimony establishing that birth by attending midwife was commonplace in 1950. Unlike hospital births, birth certificates typically do not issue immediately after births by attending midwife. Because it is likely that Plaintiff was delivered out-of-hospital by an attending midwife, the fact that Plaintiff's delayed United States birth certificate was obtained via affidavit several years after her birth, is substantially less concerning to the Court.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW – 10

8.  Plaintiff's school records are also persuasive to the Court. Certified records from the San Antonio Independent School District list Plaintiff as attending the district for most of her childhood. These records also list Plaintiff's birthplace as San Antonio, Texas. This indicates to the Court that Plaintiff's mother was building a life for her children in the United States and seemingly had little motivation to return to Mexico. In other words, the Court is skeptical that Ms. Nieto would travel to Mexico to give birth to Plaintiff just to return to the United States to raise her children and enroll them in school.

9.  After Micaela's Nieto's documented entry into the United States in 1946, there is no evidence indicating she ever left the United States prior to Plaintiff's birth. Given the complete lack of evidence showing Ms. Nieto departed from the United States, the Court declines to speculate that she traveled to Mexico to give birth to Plaintiff. Practical considerations bolster the Court's conclusion. First, Ms. Nieto's first pregnancy was a difficult one. When she gave birth to Plaintiff's brother, who is less than two years older than Plaintiff, Plaintiff's brother suffered severe, long lasting injury resulting from oxygen deprivation at birth. The Court is therefore skeptical that Ms. Nieto would choose to travel to a place with fewer medical resources just ahead of the birth of her second child, knowing full well that she may face significant complications. The Court is also skeptical that Ms. Nieto, having surrendered her visa and declared an intent to remain in the

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 11

United States, would leave her father and siblings living in Texas to travel to Mexico to give birth to Plaintiff.

      10.    The Court finds Plaintiff to be a highly credible witness. At the bench trial, Plaintiff testified that she experienced shock and confusion when she learned of her Mexican birth certificate. She also testified that her parents always told her she was born in the United States. The Court declines to speculate that Plaintiff's parents consistently lied to her.

      11.    Plaintiff's maternal aunt, Ms. Tomasa, testified by deposition that she knows, from Plaintiff's mother, that Plaintiff was born in the United States. Again, the Court declines to speculate that Plaintiff's mother lied to her sister about Plaintiff's birth.

      12.    Finally, Plaintiff has lived her life consistent with someone who was born in the United States. She has a United States birth certificate, attended school in Texas, was issued a United States passport, served as a juror in a Washington state court, and worked for the federal Government for over two decades.

      13.    In contrast, the only evidence supporting the Government's claim that Plaintiff was born in Mexico is Plaintiff's Mexican birth certificate. When weighed against the evidence supporting Plaintiff's birth in the United States, the Court finds its more likely than not that Plaintiff was born in the United States.

//

*Mandamus Relief under 28 U.S.C. § 1361*

14. District courts have original jurisdiction in mandamus actions to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. 28 U.S.C. § 1361.

15. "Mandamus is an extraordinary remedy which is to be utilized only in the most urgent cases." *Strait v. Laird*, 445 F.2d 843, 844 (9th Cir. 1971), *rev'd on other grounds*, 406 U.S. 341 (1972). Plaintiff has failed to show any urgent circumstances justifying mandamus relief. Moreover, the issuance of a United States passport depends on the Department's determination of circumstances other than the applicant's citizenship. *See* 22 U.S.C. § 211a. Plus, now that Plaintiff has been legally declared a United States citizen, she may be able to obtain a passport by submitting another DS-11 Application. Accordingly, mandamus relief is inappropriate at this time and Plaintiff's request for mandamus relief is denied without prejudice.

Accordingly, **IT IS HEREBY ORDERED**:

1. The Clerk's Office is directed to enter **JUDGMENT** in Plaintiff's favor.

   A. Plaintiff is hereby declared a citizen of the United States of America.

**2.** Plaintiff's request for mandamus relief, **ECF No. 7 at 2–3**, is **DENIED WITHOUT PREJUDICE**.

**3.** Plaintiff shall submit to the Court any motion for attorney's fees and costs pursuant to 28 U.S.C. § 2412(d)(1)(B) within thirty days of entry of this Judgment.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 13th day of October 2021.

_____
SALVADOR MENDOZA, JR.
United States District Judge